IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| VIRTUALAGILITY, INC.,<br><br>        Plaintiff,<br><br>        v.<br><br>SALESFORCE.COM, INC.; DELL INC.;<br>DR PEPPER SNAPPLE GROUP, INC.;<br>KIMBERLY-CLARK CORP.; NBCUNIVERSAL,<br>INC.; LIVINGSOCIAL, INC.; FEDEX CORP.;<br>FEDEX CORPORATE SERVICES, INC.; BMC<br>SOFTWARE, INC.; BANK OF AMERICA<br>CORPORATION; BANK OF AMERICA,<br>NATIONAL ASSOCIATION; MERRILL<br>LYNCH & CO., INC.; and MERRILL LYNCH,<br>PIERCE, FENNER & SMITH<br>INCORPORATED,<br><br>        Defendants. | CIVIL ACTION NO. 2:13-CV-011<br><br>DEFENDANTS' JOINT MOTION<br>TO TRANSFER VENUE<br><br>JURY TRIAL DEMANDED |

### DEFENDANTS' JOINT MOTION TO TRANSFER VENUE

Defendants salesforce.com, inc., Dell Inc., Dr Pepper Snapple Group, Inc., Kimberly-Clark Corp., NBCUniversal, Inc., LivingSocial, Inc., FedEx Corporation, FedEx Corporate Services, Inc., BMC Software, Inc., Bank of America Corporation, Bank of America, National Association, Merrill Lynch & Co., Inc., and Merrill Lynch, Pierce, Fenner & Smith Incorporated (collectively "Defendants") hereby jointly move pursuant to 28 U.S.C. § 1404(a) to transfer this patent infringement action to the U.S. District Court for the Northern District of California. Defendants make this motion because there is no nexus between the Eastern District of Texas and any of the primary parties or potential witnesses to this case.  In contrast, the Northern District of California is clearly a more convenient forum to litigate this case because, among

other things, the witnesses most familiar with the design and operation of the salesforce.com, inc.

products accused of infringement are located in that venue.

This Motion is supported by the following brief, as well as the Declarations of Joel C.

Boehm of Wilson Sonsini Goodrich & Rosati ("Boehm Decl.") (with attached Exhibits A-M);

Larry Robinson of salesforce.com, inc.; Syed Hassan of Dell Inc.; Michael Lee Woods of Dr

Pepper/Seven Up, Inc., an indirect subsidiary of Dr Pepper Snapple Group, Inc.; Rebecca

Lombard of Kimberly-Clark, Inc.; Kathryn Curtis of NBCUniversal, Inc.; Derek Smith of

LivingSocial, Inc.; Lynn B. Diebold of FedEx Corporation; Barbara Siordia of BMC Software,

Inc.; and Vincent J. Bona of Merrill Lynch, Pierce, Fenner & Smith Incorporated and Bank of

America, National Association.

VirtualAgility, Inc. opposes this motion.  A Certificate of Conference is included at the

end of this Motion pursuant to L.R. CV-7(i).

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ....................................................................................................1

II.   BACKGROUND FACTS .........................................................................................2

    A.    Case Overview and Procedural Status ........................................................2

    B.    Plaintiff, VirtualAgility, Inc. ......................................................................2

    C.    Salesforce ...................................................................................................3

    D.    Key Former Employees of Salesforce ........................................................3

    E.    Key Oracle Prior Art ..................................................................................3

    F.    The Salesforce Customers ..........................................................................4

III.  ARGUMENT ...........................................................................................................5

    A.    Civil Actions Should Be Transferred For the Convenience Of the
        Parties.........................................................................................................5

    B.    VA Could Have Brought This Action In The Northern District of
        California. ...................................................................................................5

    C.    The Private Interest Factors Strongly Favor Transfer To The Northern
        District of California. ..................................................................................6

        1.    The Convenience of Salesforce and VA Witnesses Strongly
            Favors Transfer. ..............................................................................6

            (a)   The Northern District of California is a far more
                convenient venue for Salesforce witnesses......................................6

            (b)   The Northern District of California is at least a slightly
                more convenient venue for VA.........................................................7

            (c)   The Salesforce Customers should have little or no effect
                on the transfer analysis....................................................................8

            (d)   The Northern District of California is a More
                Convenient Venue for the Salesforce Customers. ........................10

        2.    The relative ease of access to proof favors transfer. .................................11

        3.    The availability of compulsory process to secure the attendance
            of key prior art witnesses and former Salesforce and VA
            employees strongly favors transfer. ............................................12

        4.    Other practical factors are neutral................................................14

    D.    Public Interest Factors Also Favor Transfer to California....................................14

        1.    The Northern District of California's local interest in
            adjudicating this dispute favors transfer. ....................................14

        2.    Other public interest factors are neutral.....................................15

IV.   CONCLUSION......................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Art Tech. Group, Inc. v. Puritan's Pride, Inc.*, 716 F. Supp. 2d 93 (D. Mass. 2010).....................6

*DietGoal Innovations LLC v. Time Inc.*, No. 2:12-CV-337-JRG-RSP, 2013 WL
    1222303 (E.D. Tex. Mar. 25, 2013)...............................................................15

*Droplets, Inc. v. E\*TRADE Financial Corp.*, No. 2:11-cv-00255-MHS-CMC,
    2012 WL 3133398 (E.D. Tex. March 5, 2012).........................................................8

*EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 2:10-CV-448-DF, 2012
    WL 122562 (E.D. Tex. Jan. 9, 2012)...............................................................8

*Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673 (E.D. Tex. 2001).......................................5

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009)........................................ passim

*In re Hoffman-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) ......................................15

*In re Microsoft Corp.*, 630 F.3d 1361 (Fed. Cir. 2010) ..........................................8, 11

*In re Nintendo*, 589 F.3d 1194 (Fed. Cir. 2009) ..................................................15

*In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) ...........................................5

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) (en banc).......................... passim

*IPVX Patent Holdings, Inc. v. Adtran, Inc.*, No. 6:12-cv-00166-LED, Dkt. 28
    (E.D. Tex. March 21, 2013).....................................................................8, 11

*Mobil Oil Corp. v. W.R. Grace Co.*, 334 F. Supp. 117 (S.D. Tex. 1971)................................9, 10

*Network Protection Sciences, LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-
    JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012)....................................................14, 15

*Personalweb Technologies, Inc .v NEC Corp.*, No. 6:11-CV-655 (E.D. Tex.
    March 21, 2013)..................................................................................10

*Refined Recommendation Corp. v. Netflix, Inc.*, No. 07-CV-04981 (DMC), 2008
    WL 474106 (D.N.J. Feb. 15, 2008) .................................................................7

*Shifferaw v. Emson USA*, No. 2:09-CV-54-TJW-CE, 2010 WL 1064380 (E.D.
    Tex. March 18, 2010)...........................................................................9, 10

*Software Rights Archive, LLC v. Google, Inc.*, No. 2:07-cv-511-CE, 2010 WL
    2950351 (E.D. Tex. July 22, 2010)................................................................5

*Spread Spectrum Screening, LLC, v. Eastman Kodak Co.*, No. 10 C 1101, 2010
WL 3516106 (N.D. Ill. Sept. 1, 2010) ...............................................................................9

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321 (D.
Del. 2009) ...................................................................................................................9, 10

*WiAV Networks, LLC v. 3Com Corp.*, Civ. A. No.5:09-CV-101 (DF), Dkt. 415
(E.D. Tex. July 15, 2010)...................................................................................................12

**STATUTES**

28 U.S.C. § 1404(a) ...............................................................................................................5

35 U.S.C. § 299......................................................................................................................7

**RULES**

Fed. R. Civ. P. 45(c)(3)(B)(iii) ...........................................................................................13

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| the '413 Patent | U.S. Patent No. 8,095,413 |
| Boehm Decl. | Declaration of Joel C. Boehm submitted with this brief |
| Boehm Ex. __ | Exhibit to the declaration of Joel C. Boehm submitted with this brief |
| Cust. Decls. | Collectively, the declarations of Syed Hassan of Dell Inc.; Michael Lee Woods of Dr Pepper/Seven Up, Inc., an indirect subsidiary of Dr Pepper Snapple Group, Inc.; Rebecca Lombard of Kimberly-Clark, Inc.; Kathryn Curtis of NBCUniversal, Inc.; Derek Smith of LivingSocial, Inc.; Lynn B. Diebold of FedEx Corporation; Barbara Siordia of BMC Software, Inc.; and Vincent J. Bona of Merrill Lynch, Pierce Fenner & Smith Incorporated and Bank of America, National Association, submitted with this brief |
| EDTX | Eastern District of Texas |
| Oracle | Oracle Corporation |
| NDCA | Northern District of California |
| Robinson Decl. | Declaration of Larry Robinson of Salesforce submitted with this brief |
| Salesforce | Defendant salesforce.com, inc. |
| Customers | Collectively, Defendants Dell Inc., Dr Pepper Snapple Group, Inc., Kimberly-Clark, Inc., NBCUniversal, Inc., LivingSocial, Inc., FedEx Corporation, FedEx Corporate Services, Inc., BMC Software, Inc., Bank of America Corporation, Bank of America, National Association, Merrill Lynch & Co., Inc., and Merrill Lynch, Pierce, Fenner & Smith Incorporated. |
| VA | Plaintiff VirtualAgility, Inc. |

## I.    INTRODUCTION

This is a lawsuit between VirtualAgility, a Massachusetts company, and Salesforce, a California company.  Neither have relevant connections to this district.  VA also sued a selection of Salesforce's thousands of customers, but VA admits the Customers' only alleged wrongdoing is use of Salesforce products.   As such, this litigation centers on: (1) whether Salesforce's products—developed, produced, marketed, and sold in San Francisco—infringe the patent of VA and (2) whether the VA patent is invalid in light of prior art, such as Oracle Projects—a prior art product developed, produced, marketed, and sold in the Northern District of California.  Because numerous witnesses, third-party witnesses, and documents related to these issues are in NDCA, it is clearly a more convenient venue.  Thus, Defendants move to transfer this litigation to the District Court for the Northern District of California.

As a threshold matter, this case could have been brought in NDCA.  Beyond that, every factor of the transfer analysis favors transfer or is neutral:

•       **Witness convenience favors transfer.**  NDCA is a more convenient venue for the sole maker of the accused products—Salesforce—and for VA.  The location of VA's selection of Customers is of little relevance because these Customers have little, if any, non-cumulative information relevant to this case's key issues.

•       **Ease of access to sources of proof favors transfer.**  This litigation's most key documents—those relating to the development, production, marketing, and sales of accused Salesforce products—are concentrated in San Francisco.

•       **Availability of compulsory processes favors transfer.**  Third parties with relevant information can be subpoenaed for trial in NDCA, but not in EDTX.  Oracle Projects is a prior art product that predates VA's '413 Patent and invalidates the '413 Patent.  Oracle, its current

employees, and the "Father of Oracle Projects" are in NDCA.  Likewise, former Salesforce employees are in NDCA.

• **Local interest favors transfer.**  Salesforce's development of accused products was in NDCA, and VA's allegations call into question the work and reputation of individuals in NDCA. Thus, the people of NDCA have an interest in this dispute; this district does not.

• **All other factors are neutral.**

For these reasons, and as explained below, NDCA is a clearly more convenient venue than this Court.  As such, transfer is appropriate.

## II.   BACKGROUND FACTS

### A.   Case Overview and Procedural Status

VA accuses the Salesforce "Sales Cloud" and "Service Cloud" products of infringing the '413 Patent.  Dkt. 22 at ¶ 34, 49, 52.  VA admits that "the accused products originate from one common Defendant—Salesforce.com."  Dkt. 22 at ¶ 47.  Thus, VA's only accusations against the Customers are based on using the accused Salesforce products.

VA filed its complaint on January 4, 2013, and amended its complaint to add additional defendants on January 30, 2013.  Dkt. Nos. 1, 22.  Defendants first responded on April 5, 2013. Dkt. 34.  No scheduling conference is set, and no discovery has occurred.

### B.   Plaintiff, VirtualAgility, Inc.

VA alleges it is a Delaware corporation with its place of business in Winchester, Massachusetts.  Dkt. 22 at ¶ 1.  VA's complaint does not allege any connection to Texas.

VA also has personnel and/or former personnel in NDCA.  In particular, Mr. Michael Patrick Carns (believed to be a VA director) resides in NDCA.  Boehm Decl. ¶ 3; Boehm Ex. A. Also, Mr. Robert Torchon, a current or former developer of VA technology, resides nearby in

Ventura County, California.  Boehm Decl. ¶4; Boehm Ex. B.  Each of these people is likely to know about VA's business, licensing practices, technology, and/or patents.

The sole alleged '413 Patent inventor, Douglas Beaven, passed away.  Boehm Ex. C.

**C.    Salesforce**

Salesforce is headquartered and has its principal place of business in NDCA.  Robinson Decl. ¶ 3.  It has over 4,000 employees and office space in 14 buildings in NDCA.  *Id.* ¶¶ 13, 14.

Relevant witnesses and documents for Salesforce are in NDCA.  For example, the Salesforce personnel with the most information about, and who were responsible for, the architecture and functional design of the only accused products, "Sales Cloud" and "Service Cloud," including Larry Robinson, William Moxley, Michael Ramsey, Chet Chauhan, Blake Markham, and Pratima Arora are in San Francisco.  *Id.* ¶¶ 5–8, 10.  Likewise, the Salesforce person with the most knowledge of Salesforce's revenue by product lines, Max Wadum, is also in San Francisco.  *Id.* ¶ 9.  Salesforce documents relating to creation, development, marketing, and sales of the accused products, including user manuals, training materials, and source code, are also centered in San Francisco.  *Id.* ¶ 12.

Salesforce has no witnesses, documents, or facilities in EDTX.  *Id.* ¶ 17-18.

**D.    Key Former Employees of Salesforce**

Certain people very familiar with Salesforce's accused products are no longer employed by Salesforce.  For example, Etienne Giraudy was Director of Product Management for the accused Salesforce "Service Cloud" product for over four years, but he recently left Salesforce. *Id.* ¶ 11.  Mr. Giraudy resides and works in NDCA (San Francisco Bay Area).  *Id.*

**E.    Key Oracle Prior Art**

From 1996 to 1998, Oracle developed Oracle Projects, "a complete software solution for project-orientated companies, providing [] a flexible approach to defining and structuring

projects, tasks, and budgets. . . ."  Boehm Decl. ¶ 6.  Oracle published its Oracle Projects User's Guide, Release 11, in March 1998—more than one year before the '413 Patent's earliest possible priority date.  *See id.*  The Guide—one piece of evidence concerning the prior art system—discloses every element of at least some, if not all, claims of VA's '413 Patent.  An exemplary claim chart is provided at Exhibit 1 to this brief.  Defendants anticipate testimony from Oracle witnesses in NDCA will completely invalidate the '413 Patent at trial.  For instance, Dylan Wan, who led a group of project managers for Oracle Projects, is in the San Francisco Bay Area.  Boehm. Ex. D.  Oracle is headquartered within NDCA.  Boehm Decl. ¶ 6; Boehm Exs. E-F.

Randy Egger spearheaded development of Oracle Projects.  Boehm Ex. G.  Known as the "Father of Oracle Projects," Mr. Egger has left Oracle, but works in NDCA.  Boehm Exs. G-I.  Other third party witnesses in NDCA, Kimberly McDonald Baker, Neeraj Garg, David McNeil, and Michael J. Zwain, also previously worked for Oracle and have historical knowledge concerning Oracle Projects, and Tamim Kulaly is likely to have such knowledge as well.  *See* Boehm Ex. H.  Thus, Defendants expect these individuals will be important witnesses in establishing why the Oracle Projects prior art system invalidates the '413 Patent.

## F.    The Salesforce Customers

VA accuses each Customer of infringement based on "Salesforce.com's cloud-based software" and admits the accused products originate "from one common Defendant"—Salesforce.  Dkt. 22 at ¶ 47.  Salesforce has customers worldwide, but the customers VA brought suit against all have at least case-specific connections to NDCA, and generally have office facilities and/or conduct continuous and systematic business within NDCA.  *See generally* Cust. Decls.

Because the Customers' only alleged infringement relates to Salesforce products, witnesses and documents related to the Salesforce products are most relevant to this litigation.  Apart from Salesforce itself, those sources of proof may be throughout the country, but 10 of the

12 Customers agree NDCA is more convenient, while Dell and Dr Pepper Snapple Group indicate NDCA is equally convenient for this case.  *See id.*

## III.   ARGUMENT

### A.   Civil Actions Should Be Transferred For the Convenience Of the Parties.

Section 1404(a) states a district court has the power to transfer a civil action to any district in which it might have been filed.  A court may transfer "[f]or the convenience of [the] parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a).  Courts are permitted "broad discretion in deciding whether to order a transfer."  *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 311 (5th Cir. 2008) (en banc) (citations omitted).

A court abuses its discretion if it refuses to transfer where the transferee forum is "clearly more convenient."  *Volkswagen II*, 545 F.3d at 315; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).  To determine whether another district is "clearly more convenient," the Fifth Circuit requires consideration of both private interest and public interest factors.  *Volkswagen II*, 545 F.3d at 315.  As to a plaintiff's venue choice: "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis."  *In re TS Tech USA Corp*, 551 F.3d at 1320.  Moreover, a plaintiff's venue choice is particularly unimportant "when none of the parties reside *in this division* of this District."  *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001) (citations omitted) (emphasis added).

### B.   VA Could Have Brought This Action In The Northern District of California.

As a threshold matter, § 1404(a) requires the Court to determine whether VA's claims could have been filed in the transferee district—NDCA.

All Defendants have contacts with NDCA such that general and/or case-specific jurisdiction is proper.  *See* Cust. Decls.; Robinson Decl.  Thus, this suit would be just as proper in NDCA as it is in EDTX and is therefore amenable to transfer.  *See id.*; *see also, e.g., Software*

*Rights Archive, LLC v. Google, Inc.*, No. 2:07-cv-511-CE, 2010 WL 2950351, at *2 (E.D. Tex. July 22, 2010) (holding venue is satisfied in transferee district where plaintiff accused defendant of "nationwide acts of infringement"); *Art Tech. Group, Inc. v. Puritan's Pride, Inc.*, 716 F. Supp. 2d 93, 103 (D. Mass. 2010) (finding jurisdiction in district foreseeable and proper where customer obtained license and support from software company in the district).  Moreover, all Defendants consent to NDCA for the limited purposes of this case.

### C.    The Private Interest Factors Strongly Favor Transfer To The Northern District of California.

Once a court determines a case could have been brought in the transferee forum, the court then must consider the private interest factors: (1) the cost of attendance for willing witnesses; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process to secure the attendance of witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  *See Volkswagen II*, 545 F.3d at 315.

#### 1.    The Convenience of Salesforce and VA Witnesses Strongly Favors Transfer.

"The convenience of the witnesses is probably the single most important factor in transfer analysis."  *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (citation omitted).  As explained below, NDCA is far more convenient for the most critical witnesses—the Salesforce employees responsible for the accused product.  NDCA is also a more convenient venue for VA. Meanwhile, the Customers do not affect the analysis; and in any event, NDCA is also generally more convenient, and otherwise equally convenient, for the Customers.

##### (a)    The Northern District of California is a far more convenient venue for Salesforce witnesses.

Salesforce's location in NDCA weighs heavily in favor of transfer.  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer."

*In re Genentech*, 566 F.3d at 1345 (internal citations and quotations omitted).  Thus, the Federal Circuit emphasizes materials relating to the "development, manufacturing, and marketing" of accused products when assessing transfer.  *Id.*; *see also Refined Recommendation Corp. v. Netflix, Inc.*, No. 07-CV-04981 (DMC), 2008 WL 474106, at *4 (D.N.J. Feb. 15, 2008) ("[A]s a general rule, the preferred forum is that which is the center of gravity of the accused activity.").

Here, VA sued many Defendants in one case.  Under the America Invents Act, this is only possible because VA alleges its right to relief arises out of the sale of a common product.  35 U.S.C. § 299.  In particular, VA alleges the "Accused Instrumentality" of every "Customer Defendant" is Salesforce's "Sales Cloud" and/or "Service Cloud" products.  Complaint at ¶ 47.  Thus, it is the "development, manufacturing, and marketing" of Salesforce's products that are the key evidence in this litigation, and the center of gravity of the accused activity is Salesforce's development, making, marketing, and sale of its products.

Given the guidance of *In r*e *Genentech*, NDCA clearly presents the most convenient venue.  Salesforce is headquartered in NDCA, and its development, accounting, and sales of its accused products all occur within NDCA.  Robinson Decl. ¶¶ 3, 10, 19.   The concentration of Salesforce personnel responsible for these activities works and resides in NDCA.  *Id.* ¶ 5-10.  Meanwhile, Salesforce has no relevant personnel in EDTX.  *Id.* ¶ 18.  The center of gravity of accused activity is in NDCA, and this heavily favors transfer.

> **(b)    The Northern District of California is at least a slightly more convenient venue for VA.**

Behind Salesforce, VA has the second-most relevant information.   VA's witnesses, however, are less important than a typical patent case because the '413 Patent's only named inventor, Mr. Douglas F. Beaven, is deceased.  Boehm Ex. C.

With respect to VA's remaining personnel, Defendants expect that they are largely located in Winchester, Massachusetts—the location of VA's headquarters.  Complaint at ¶ 1. For these witnesses, travel to NDCA is more convenient because direct flights exist from Boston to San Francisco, although travel time to EDTX is approximately equal (generally around 7 hours).  *See* Boehm Exs. J-M; *see also IPVX Patent Holdings, Inc. v. Adtran, Inc.*, No. 6:12-cv-00166-LED, Dkt. 28 at 5 (E.D. Tex. March 21, 2013) (indicating direct flights are a relevant consideration, and distances for witness who will travel "a significant distance no matter where they testify" are disregarded) (citing *In re Genentech*, 566 F.3d at 1344).  Moreover, the "Eastern District of Texas' centralized location" cannot be relied upon as a reason to deny transfer.  *See EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 2:10-CV-448-DF, 2012 WL 122562, at *4 (E.D. Tex. Jan. 9, 2012) (quoting *In re Genentech*, 566 F.3d at 1344 ); *see also Droplets, Inc. v. E*TRADE Financial Corp.*, No. 2:11-cv-00255-MHS-CMC, 2012 WL 3133398, at *2 (E.D. Tex. March 5, 2012) (holding the same).

Meanwhile, VA's Michael Patrick Carns resides in NDCA.  Boehm Decl. ¶ 3.  VA's Robert Torchon resides in nearby Ventura County, CA.  *Id.* ¶ 4.  NDCA is thus at least a slightly more convenient venue for VA than EDTX.

### (c)     The Salesforce Customers should have little or no effect on the transfer analysis.

VA's allegations are directed at Salesforce's products, and VA admits it sued the Customers only because they use Salesforce products.  VA suing a select sample of Salesforce's customers should not impact the transfer analysis.  *Cf. In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2010) (indicating courts should not "honor connections to a preferred forum made . . . for the likely purpose of making that forum appear convenient").

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321 (D. Del. 2009) is illustrative.  There, the patentee filed suit against eight Cisco customers.  *Id*. at 324. Cisco moved to intervene and transfer.   *Id.*   The court emphasized that "[a]lthough the convenience or inconvenience to Cisco's customers is not irrelevant, the focus of the Court's analysis should be on plaintiff and Cisco."   *Id*. at 331 (citations omitted).   Thus, the court transferred based on Cisco's California presence, because the claims against Cisco customers are "fundamentally claims against the ordinary users of Cisco's [product]" and because the dispute with Cisco would resolve "the validity of plaintiff's claims against Cisco."  *Id*.

Other courts have similarly afforded little or no weight to the location of customers or retailers of an allegedly infringing product.  For example:

- In *Shifferaw v. Emson USA*,  No. 2:09-CV-54-TJW-CE, 2010 WL 1064380, at *3 (E.D. Tex. March 18, 2010), the court severed claims against the retailer as "peripheral" to dispositive claims.   After severing, the court transferred the patentee's case against the New York manufacturer to New York.  *Id.* at *6.

- In *Spread Spectrum Screening, LLC, v. Eastman Kodak Co.*, No. 10 C 1101, 2010 WL 3516106, at *6 (N.D. Ill. Sept. 1, 2010), the court severed claims against Kodak's customers and transferred the action against Kodak.  The court noted customers were "peripheral" and "the only significant reason plaintiff has joined Kodak's Customers in its action against Kodak is to establish proper venue . . . ."  *Id.* at *1, 3.  Thus, the Kodak customers "have nothing substantive to offer during plaintiff's action against Kodak."  *Id.* at *3.

- In *Mobil Oil Corp. v. W.R. Grace Co.*, 334 F. Supp. 117, 128 (S.D. Tex. 1971), the court severed and stayed suit against Grace's customer while transferring the suit against Grace.  The court classified the customer as a "secondary or peripheral defendant" because the claim against

the customer stemmed from the customer's "purchase and use of a minute percentage of one of the eight allegedly infringing products manufactured and sold by Grace." *Id*. at 123.  *Cf. also In re Genentech*, 566 F.3d at 1345 (emphasizing importance of materials relating to "development, manufacturing, and marketing" of accused products); *Personalweb Technologies, Inc .v NEC Corp.*, No. 6:11-CV-655, at 41 (E.D. Tex. March 21, 2013) (recognizing that customer accused of infringement based on another defendant's products "will have fewer relevant documents and witnesses than either [the primary defendant] or [plaintiff]").

The facts here likewise support transfer.  Salesforce's Customers are peripheral to this litigation.  VA accuses Customers of no wrong-doing other than use of Salesforce's allegedly infringing products, and VA's claims against Salesforce will dispose of this allegation.  Also, the Customers have no confidential, proprietary technical information about the accused products. *See* Robinson Decl. ¶ 4; *see generally* Cust. Decls. (each indicating Customers lack confidential information regarding proprietary technical aspects of the Salesforce products).  There is nothing in the claims of the '413 Patent that would lead to the conclusion any of the Salesforce customers have information relevant to the infringement analysis that would not be in Salesforce's possession, perhaps exclusively.  Thus, the locations of Salesforce's Customers should be given little or no weight in the transfer analysis.[1]

### (d)   The Northern District of California is a More Convenient Venue for the Salesforce Customers.

The Customers are scattered throughout the country.  In considering relative convenience to them, the availability of direct flights to NDCA is a consideration and again, distances for

---

[1]     Alternatively, consistent with the cited law—*e.g.*, *Shifferaw*, 2010 WL 1064380, at *3; *Teleconference Sys.*, 676 F. Supp. 2d at 331—Salesforce respectfully moves for VA's litigation against its customers be severed and stayed so that VA's case against Salesforce can be transferred to NDCA and move forward in an appropriate venue.  Also, in any event, Defendants reserve the right to seek to sever and stay VA's litigation against the Customers.

witnesses who will travel "a significant distance no matter where they testify" are disregarded. *E.g.*, *IPVX Patent Holdings, Inc.*, Order at 5 (citing *In re Genentech*, 566 F.3d at 1344). Also, the geographic centrality of this Court must be disregarded. *See In re Genentech*, 566 F.3d at 1344 (finding "the district court improperly used [EDTX's] central location as a consideration in the absence of witnesses within" EDTX). With this in mind, NDCA is more convenient for 10 of the 12 Customer Defendants, and equal for Dell and Dr Pepper Snapple Group. *See generally* Cust. Decls; *see also* Boehm Decl. ¶ 16.

Moreover, Salesforce has more customers, including Sales Cloud and Service Cloud customers, in NDCA than EDTX. Robinson Decl. ¶ 19. VA's tactic of suing only non-NDCA customers should not influence or preclude transfer. *Cf. In re Microsoft Corp.*, 630 F.3d at 1364 (refusing to honor actions made to make a forum appear convenient). Thus, if the Court is inclined to consider the location of the Salesforce customers in the transfer analysis, this factor weighs slightly in favor of transfer to NDCA.

### 2.      The relative ease of access to proof favors transfer.

Relative ease of access to proof weighs heavily in favor of transfer because the most important evidence for this litigation—evidence explaining how the accused Salesforce products operate and evidence demonstrating sales of those products—is in NDCA. As the Federal Circuit has explained, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech*, 566 F.3d at 1345 (internal citations and quotations omitted). The location of documents and evidence remains an important factor in the transfer analysis despite technology advances. *Id.*; *see also Volkswagen II*, 545 F.3d at 316.

Salesforce has space in 14 different NDCA buildings. Robinson Decl. ¶ 14. Salesforce's documents concerning development, marketing, and sales of the accused products are

concentrated in San Francisco. *Id.* ¶ 12. In contrast, none of this litigation's evidence, documents or witnesses are in EDTX.

Evidence from Salesforce's customers adds little or no weight to the analysis because their evidence is much less important than Salesforce's evidence given that only Salesforce's products are at issue. *See* Section III.C.1(c), *supra*. Moreover, Salesforce's customers have no access to Salesforce's confidential information about operation of these products. *See* Robinson Decl. ¶ 4; *see generally* Cust. Decls. To the extent their evidence matters, the evidence from the Salesforce Customers is geographically disperse and generally not in EDTX. *See* Section III.C.1(d), *supra*; *see generally* Cust. Decls.

Given this litigation's key evidence is located in NDCA, and no sources of proof are in this District, this factor favors transfer.

### 3. The availability of compulsory process to secure the attendance of key prior art witnesses and former Salesforce and VA employees strongly favors transfer.

The availability of compulsory process strongly favors transfer because key witnesses reside and/or work within 100 miles of the NDCA court and are subject to compulsory process in NDCA. In contrast, to Defendants' knowledge, no relevant third-party witness is subject to process in EDTX.

Availability of compulsory process favors transfer when more non-party witnesses reside within the transferee venue. *See Volkswagen II*, 545 F.3d at 316; *see also WiAV Networks, LLC v. 3Com Corp.*, Civ. A. No.5:09-CV-101 (DF), Dkt. 415, at 6 (E.D. Tex. July 15, 2010). The availability of compulsory process to secure witness attendance at trial weighs heavily in favor of transfer when the proposed venue has "usable" subpoena power over the witness and the present venue does not. *See In re Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power . . . weighs in favor of transfer, and not only slightly."). A

federal district court enjoys "usable" subpoena power to compel attendance of a non-party witness when the witness is located within 100 miles of the courthouse. Fed. R. Civ. P. 45(c)(3)(B)(iii). In this circumstance, a subpoena is generally not vulnerable to a motion to quash and compulsory process is available. *Id.*

Below, Defendants identify many non-parties subject to NDCA compulsory process: [2]

• First, Oracle is the owner and developer of the key Oracle Projects prior art system. Defendants expect that the Oracle Projects art will invalidate every claim of VA's '413 Patent as illustrated by the exemplary claim chart at Exhibit 1. Oracle is thus a key witness, and Salesforce expects discovery will allow further identification of Oracle employees, such as Dylan Wan, with unique knowledge of Oracle Projects. *See* Boehm Ex. D. Oracle is located in NDCA and within 100 miles of that District's San Francisco courthouse. Boehm Exs. E-F. If trial is in NDCA, live testimony about the features, history, and use of Oracle Projects will establish a first public use date and enable the jury to understand the full scope of this prior art.

• Second, Randy Egger is the "Father of Oracle Projects" and spearheaded this prior art's development. Boehm Ex. G. He now works for Project Partners, LLC within NDCA and within 100 miles of the San Francisco courthouse. Boehm Exs. H-I. Defendants expect Mr. Egger and other third parties in NDCA, including Kimberly McDonald Baker, Neeraj Garg, Tamim Kulaly, David McNeil, and Michael J. Zwain, will be intimately aware of the features of the Oracle Projects prior art as well as how its history predates VA's application for the '413 Patent.

• Third, Salesforce expects many of its relevant former employees now live or work within 100 miles of the San Francisco courthouse. In particular, Etienne Giraudy resides and works in San Francisco. Mr. Giraudy was a product management director of Salesforce's accused Service

---

[2] Here, Defendants identify seven individual witnesses by name, but Defendants expect that, for instance, discovery on Oracle will reveal additional relevant personnel within NDCA.

Cloud product for over four years before recently leaving Salesforce.  Robinson Decl. ¶ 11.

Thus, Mr. Giraundy can testify to the operation and development of the accused product.

If this case remains in Texas, Defendants will be prejudiced by not being able to compel

these witnesses to appear for trial, but Defendants could compel all of these witnesses to trial in

San Francisco.  Thus, the availability of compulsory process heavily favors transfer.

### 4.    Other practical factors are neutral.

No discovery has occurred in this case.  No scheduling conference has been set.  To

Defendants' knowledge, there are no related cases.  As such, all other private factors are neutral.

### D.    Public Interest Factors Also Favor Transfer to California.

In deciding a motion to transfer, courts also consider public interest factors such as: (1)

administrative difficulties flowing from court congestion; (2) local interest in having localized

interests decided at home; (3) the familiarity of the forum with the law that will govern the case;

and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign

law.  *Volkswagen II*, 545 F.3d at 315.  Here, the public interest weighs in favor of transfer.

### 1.    The Northern District of California's local interest in adjudicating this dispute favors transfer.

NDCA has far more local interest in this action than EDTX.  In considering local interest,

"[i]nterests that could apply virtually to any judicial district or division in the United States, such

as the nationwide sale of infringing products, are disregarded in favor of particularized local

interests."  *Network Protection Sciences, LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG,

2012 WL 194382, at * 7 (E.D. Tex. Jan. 23, 2012) (internal quotes and citation omitted).  Also, a

proposed transferee forum has a "self-evident" local interest where an accused product is

"developed and tested" in that district, sources of proof were maintained there, and the "cause of

action call[ed] into question the work and reputation of several individuals residing in or near that district." *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

Similarly, NDCA has a strong local interest here because Salesforce developed and tested the only accused products in NDCA, and VA's infringement allegations call into question the work and reputation of Salesforce's employees that reside in NDCA.  Also, if this case is tried, a jury will decide whether Salesforce—an NDCA company with over four thousand NDCA employees—pays damages.  Thus, the NDCA Court and its jurors have a greater interest in this dispute than this Court and its jurors.  *See id.*; *cf. DietGoal Innovations LLC v. Time Inc.*, No. 2:12-CV-337-JRG-RSP, 2013 WL 1222303, at *4 (E.D. Tex. Mar. 25, 2013) (noting local interest where accused web site is managed and created).  This favors transfer.

### 2.   Other public interest factors are neutral.

Remaining considerations such as familiarity of the forum with the law, avoiding conflict of law, and application of foreign law are neutral.  *See, e.g., Network Protection Sciences, LLC*, 2012 WL 194382, at *7 ("Both the Northern District of California and the Eastern District of Texas are familiar with patent law, and thus this factor is neutral.").  The "most speculative" factor, court congestion, is also neutral.  *Id.* at *6 (quoting *Genentech*, 566 F.3d at 1347).

In sum, this is "a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff. . . ."  *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).  As such, transfer is appropriate.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request transfer to NDCA.

Dated:  April 22, 2013

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: /s/ Jose C. Villarreal
     Jose C. Villarreal
     State Bar No. 24003113
     jvillarreal@wsgr.com
     Joel C. Boehm
     State Bar No. 24069393
     jboehm@wsgr.com
     900 South Capital of Texas Highway
     Las Cimas IV, Fifth Floor
     Austin, TX 78746-5546
     Telephone:  (512) 338-5400
     Facsimile:   (512) 338-5499

     Larry L. Shatzer
     (*pro hac vice*)
     lshatzer@wsgr.com
     1700 K Street, NW
     Fifth Floor
     Washington, DC 20006
     Telephone:  (202) 973-8800
     Facsimile:   (202) 973-8899


**ATTORNEYS FOR DEFENDANTS
SALESFORCE.COM, INC.; DELL INC., DR
PEPPER SNAPPLE GROUP, INC.;
NBCUNIVERSAL, INC.; LIVINGSOCIAL, INC.;
FEDEX CORPORATION; FEDEX CORPORATE
SERVICES, INC.; BMC SOFTWARE, INC.;
BANK OF AMERICA CORPORATION; BANK OF
AMERICA, NATIONAL ASSOCIATION;
MERRILL LYNCH & CO., INC.; AND MERRILL
LYNCH, PIERCE, FENNER & SMITH
INCORPORATED**

BAKER BOTTS L.L.P.

By: /s/ Darryl J. Adams
       Kevin J. Meek
       State Bar No. 13899600
       kevin.meek@bakerbotts.com
       Darryl J. Adams
       State Bar No. 00796101
       darryl.adams@bakerbotts.com
       98 San Jacinto Blvd., Suite 1500
       Austin, TX 78701
       Telephone:  (512) 322-2500
       Facsimile:   (512) 322-2501

       **ATTORNEYS FOR DEFENDANT,
       KIMBERLY-CLARK CORPORATION**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that I, Jose C. Villarreal, conferred regarding Defendants' Motion to Transfer Venue with Edward Chin, NIX PATTERSON & ROACH, L.L.P., counsel for Plaintiff, who advised that Plaintiff is opposed to the motion.

By:    /s/ Jose C. Villarreal
        Jose C. Villarreal

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by US Mail on this the 22nd day of April, 2013.

By:   /s/ Jose C. Villarreal