# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| **VIRTUALAGILITY, INC.,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | **CIVIL ACTION NO. 2:13-CV-11-JRG** |
| v. | § | |
| | § | |
| **SALESFORCE.COM, INC.,** *et al.*, | § | **JURY TRIAL DEMANDED** |
| | § | |
| *Defendants*. | § | |

## VIRTUALAGILITY'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO TRANSFER VENUE

**TABLE OF CONTENTS**

I. FACTUAL BACKGROUND ..................................................................................................1

    A. VirtualAgility and Its Background ..........................................................................2

    B. The Defendants Have Been Less-Than-Candid About the Facts ............................3

II. ARGUMENTS .......................................................................................................................5

    A. **Transfer Should Be Denied Unless the Transferee Venue is Clearly More Convenient** .................................................................................5

    B. **The Private Interest Factors Weigh Strongly Against Transfer to the Northern District of California** .....................................................................6

        1. The Eastern District of Texas is more convenient for the witnesses ...........6

            a. The convenience of the non-party witnesses weighs heavily against transfer .................................................................................6

            b. The convenience of the party witnesses weighs heavily against transfer, and a transfer would only shift the inconveniences from Salesforce to VirtualAgility................................9

        2. The relative ease of access to sources of proof weighs against transfer ..................................................................................................12

        3. The availability of compulsory process to secure the attendance of witnesses is a neutral factor .................................................................13

        4. Other practical problems weigh against transfer ........................................14

    C. **The Public Interest Factors Do Not Favor Transfer to the Northern District of California** ......................................................................14

        1. There is a strong local interest in having this case decided in this District ................................................................................................14

        2. The remaining public interest factors are neutral .......................................15

III. CONCLUSION ..................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Advanced Processor Techs. LLC. V. Atmel Corp.*, No. 2:12-CV-152-JRG-RSP,
    2013 U.S. Dist. LEXIS 43050 (E.D. Tex. Mar. 26, 2013)......................................................9    1

*DataTreasury v. Capital One, et al.,* No. 6:11-cv-92,
    Dkt No. 143 (E.D. Tex. Jan. 30, 2012) .................................................................................14

*EMG Tech., LLC v. Microsoft Corp.,*
    Nos. 6:09cv367 & 6:08cv447, 2010 WL 3835768 (E.D. Tex. Sept. 28, 2010) ................14

*In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009).....................................................................6    1

*In re Hoffman-La Roche, Inc.,* 587 F.3d 1333 (Fed. Cir. 2009) .....................................................15

*In re Nintendo Co.*, 589 F.3d 1194 (Fed. Cir. 2009)..........................................................5    1

*In re Volkswagen AG (Volkswagen I),* 371 F.3d 201 (5th Cir. 2004)...............................................5

*In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304 (5th Cir. 2008) (en banc) ............15

*Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757 (E.D. Tex. 2000);.........................................6

*Music City Coach, Inc. v. Star City Coach Works, Ltd.,*
    2010 U.S. Dist. LEXIS 32917 (M.D. Tenn. April 2, 2010)................................................6

*Sybase, Inc. v. Vertica Sys., Inc.*, No. 6:08cv24,
    2008 WL 2387430 (E.D. Tex. June 9, 2008).....................................................................10

*Smith v. Kyphon*, 578 F. Supp. 2d 954 (M.D. Tenn. 2008) ................................................................9

*TechnologiesWeb Techs, LLC v. Nec Corp. of Am., Inc.*,
    2013 U.S. Dist. LEXIS 46296 (E.D. Tex. Mar. 21, 2013)..................................................8

Plaintiff VirtualAgility, Inc. ("VirtualAgility" or "Plaintiff") respectfully submits its Response in opposition to Defendants' Joint Motion to Transfer Venue ("Motion"; Dkt No. 49) from the Eastern District of Texas ("this District" or "EDTX") to the Northern District of California ("NDCA"). No single district is convenient for all the parties. On balance, the Eastern District of Texas is the more convenient and suitable venue for this case. The Defendants have failed to meet their burden of proving that the balance of the "private" and "public" factors demonstrates that the Northern District of California is a "clearly more convenient" venue than this District. Accordingly, the Defendants' Motion should be denied.

## I. FACTUAL BACKGROUND

In this patent infringement case, VirtualAgility, based in Winchester, Massachusetts, alleges past and ongoing direct and/or indirect infringement of U.S. Patent No. 8,095,413 ("the '413 Patent"), titled "Processing Management Information" by thirteen (13) defendants – Salesforce.com, Inc. ("Salesforce"); Dell, Inc. ("Dell"); Dr. Pepper Snapple Group, Inc. ("Dr. Pepper"); Kimberly-Clark Corp. ("Kimberly-Clark"); NBCUniversal, Inc. ("NBC"); LivingSocial, Inc. ("LivingSocial"); FedEx Corp. ("FedEx") and FedEx Corporate Services, Inc. ("FedEx Services") (collectively, "FedEx Defendants"); BMC Software, Inc. ("BMC"); Bank of America Corporation ("BAC"), Bank of America, National Association ("BofA"), Merrill Lynch & Co., Inc. ("ML"), and Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPFS") (collectively, "the Bank Defendants") (all defendants excluding Salesforce hereinafter collectively referred to as the "Customer Defendants'). The Defendants' accused infringing activities involve cloud-based Salesforce Software, including but not limited to the "Sales Cloud" and/or "Service Cloud" applications ("Accused Instrumentalities").

The 13 defendants consist of 1 defendant based in EDTX, 3 defendants based elsewhere in Texas, and 8 other defendants based in cities located east of Texas such as New York City,

Charlotte, Memphis, and Washington, D.C., and 1 defendant based in NDCA The only party located in or near NDCA is San Francisco-based Salesforce; every other party is in Texas or at least a thousand miles closer to Texas than NDCA. Many of the non-party potential witnesses and sources of proof are located in cities on the other side of the country from NDCA such as Boston, Washington, D.C., and New York City. Party witnesses are found in EDTX, Houston, Austin, Boston, New York, Charlotte, Washington, D.C., and NDCA.

### A. VirtualAgility and Its Background

VirtualAgility was co-founded by Douglas Beaven, who passed way in 2010 and is the sole inventor of the '413 Patent that issued on January 10, 2012. Exh. A, Declaration of Stuart E. Rudolph ("Rudolph Decl."), ¶ 5. VirtualAgility sells and distributes software that, among other things, supports distributed team collaboration and knowledge delivery across an enterprise and owns multiple patents for its technology. *See* Amended Complaint (Dkt. 22), ¶¶ 11-12. Stuart E. Rudolph is VirtualAgility's co-founder and current President, Chief Executive Officer, and Chairman of the Board. Exh. A, Rudolph Decl., ¶ 3. He is one of several inventors on several VirtualAgility patents that are not currently asserted in this case. VirtualAgility does not have any offices or employees in EDTX or NDCA. Its officers and employees reside in or around the Boston area. Its former employees reside in or around Boston, Northern Virginia (Washington, D.C. area), New York City, and Atlanta. VirtualAgility's litigation counsel has offices located within (Daingerfield, TX; Texarkana, TX) and near this District (Irving, TX; Austin, TX), and its outside general counsel is in the Washington, D.C. area. *Id*., ¶ 10(c). Its past and current patent prosecution attorneys are located in the Boston and Washington, D.C. areas. *Id.,* ¶ 11(b)-(d).

VirtualAgility has conducted significant business in Texas that is pertinent to tis action. Beginning in 2005, VirtualAgility partnered with IBM regarding integration of VirtualAgility's OPS Center and WorkCenter software solutions with IBM products to create crisis management

products to be distributed by IBM. *Id.,* ¶ 9(a). The IBM executive responsible for the VirualAgility-IBM relationship worldwide is located at IBM's facilities in Dallas, Texas, and a key technical lead is located at IBM's facilities in Coppell, Texas. VirtualAgility also worked closely with IBM technical and sales support personnel at other IBM's facilities in several locations throughout Texas. VirtualAgility personnel traveled to Texas regarding installation of VirtualAgility's solutions at IBM's facilities. *Id*.

### B. The Defendants Have Been Less-Than-Candid About the Facts.

The Defendants have taken a less-than-candid approach to informing the Court about the relevant facts. Beginning with the second sentence of their Motion, the Defendants unequivocally state that SalesForce does not have "relevant connections to this district." Motion, at 1. This is demonstrably false. Dr. Pepper, which is based in this District, negotiated a product license agreement with Salesforce that licensed and generally authorized the use of "any Salesforce products" including "some or all of the products that Plaintiff VirtualAgility accuses of infringement in its Amended Complaint." M.L. Woods Decl., Dkt No. 53, ¶¶ 4-5. Salesforce negotiated with and entered into a contract with a co-defendant headquartered in this District and that contract directly relates to the accused instrumentalities; yet, Defendants want the Court to believe that these events do not give rise to Salesforce having a relevant connection to this District. Similarly, in 2010, Salesforce issued a press release boasting about "the success that Dr. Pepper Snapple Group . . . has achieved using Sales Cloud 2." Exh. B, Press Release "Dr. Pepper Snapple Group Achieves 56% Annual ROI with Salesforce.com, February 12, 20120 ("'Salesforce.com's Sales Cloud 2 has helped us take our business to a whole new level,' said Tina Koppe, administrator, Dr. Pepper Snapple Group."). After helping Dr. Pepper take its business to a "whole new level" and touting it for the world via a press release, Defendants want the Court to believe, yet again, that Salesforce has no relevant connection to this District.

The Defendants also said that "VA admits it sued the Customers *only* because they *use* SalesForce products." Motion, at 8 (emphasis added). If they had read VirtualAgility's Amended Complaint more carefully, then it would have been apparent that VirtualAgility alleged that customers such as Dell were infringing the '413 Patent not just for using the accused products, but also for "offering to license or licensing in the United States, selling or offer to sell" the accused products. Amended Complaint (Dkt No. 22), at 9. VirtualAgility's case against the Customer Defendants is not based solely on the use of the accused products. Dell's Declaration confirms VirtualAgility's allegations. *See* S. Hassan Declaration (Dkt No. 52) (Dell "sells and implements Salesforce products" and is engaged in the "resale of Salesforce license."). Dell, a Texas company that admits that it would not be inconvenienced by appearing in this District, is clearly more than a mere "user" of Salesforce's products – it is a "Platinum Partner" in the sale and implementation of those products. *See* id., ¶ 7; Ex. A, Rudolph Decl., ¶ 9(d).

It is with this backdrop of selective disclosures and factual inaccuracies that Defendants expect the Court to trust what they say and conclude that NDCA is a clearly more convenient forum than EDTX. VirtualAgility respectfully submits that a relevant inquiry is whether the Defendants are being straight with the Court. And if the Court finds that Defendants' assertions are inaccurate, incomplete, or unreliable, then the Court can conclude that they have not met their burden of proving that NDCA is a clearly more convenient forum. VirtualAgility urges the Court to scrutinize the Defendants' statements and, just as importantly, statements that by omission they *did not make* in their declarations. For example, Dr. Pepper, Kimberly-Clark, NBC, LivingSocial, FedEx, and BMC stated in their declarations that they lacked "Salesforce-confidential, non-public knowledge or information" regarding the proprietary technical aspects of the "Sales Cloud" and "Service Cloud" products, thereby implying the SalesForce alone possessed the key sources of proof for the Defendants in this case. But what they did not tell the

Court is whether they possessed any of their *own* confidential, non-public knowledge or information such as *how* they use the accused instrumentalities in the context of their businesses and the *extent* of their use of the accused instrumentalities, which is highly relevant to at least the issues of infringement and damages. In another example, BMC touted having 250 employees in NDCA to show that NDCA was a more convenient forum. B. Siordia Decl. (Dkt No. 58). But why didn't BMC tell the Court about how many employees that it had at its *headquarters* in Houston? According to an April 4, 2013 Houston Business Journal article, "HBJ's 2012 Book of Lists reported that BMC had *1,104 Houston employees* at the beginning of 2012."[1] These are just select examples where careful scrutiny of Defendants' statements reveals that they have cherry-picked facts to stack the venue-analysis deck in their favor while omitting other highly relevant facts that would put their representations in accurate context.

## II. ARGUMENT

**A.     Transfer Should Be Denied Unless the Transferee Venue is Clearly More Convenient.**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). But transfer should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009). The initial question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG (Volkswagen I),* 371 F.3d 201, 203 (5th Cir. 2004). Given that VirtualAgility has not been able to conduct discovery to verify the statements made in the Defendants' declarations about their alleged business activities in NDCA,

---

[1] Exh. C, BMC restructuring process comes with Houston layoffs" Houston Business Journal, April 4, 2013 at http://www.bizjournals.com/houston/news/2013/04/04/bmc-restructuring-process-comes-with.html

**VIRTUALAGILITY'S RESPONSE TO DEFENDANTS' JOINT MOTION TO TRANSFER VENUE     Page 5 of 17**

it assumes for only the limited purpose of this Motion that this action could have been brought against all Defendants in NDCA. If the transferee district is a proper venue, then the court must weigh the relative public and private factors of the current venue against the transferee venue. *Id*. In making such a convenience determination, the Court considers several "private" and "public" interest factors, none of which are dispositive alone.[2] *Id*.

### B. The Private Interest Factors Weigh Strongly Against Transfer to the Northern District of California.

#### 1. The Eastern District of Texas is more convenient for the witnesses.

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). Defendants primarily focus on convenience for Salesforce's employees. One has to examine convenience for all the potential witnesses, not just for a single party. "[I]t is the convenience of non-party witnesses . . . that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 775 (E.D. Tex. 2000).[3].

##### a) The convenience of the non-party witnesses weighs heavily against transfer.

Important non-party witnesses in patent infringement lawsuits are the patent prosecution attorneys. The three (3) patent prosecution attorneys – Gordon E. Nelson, John K. Harrop, and Jason A. Reyes – that have been involved in the prosecution of the '413 Patent and/or VirtualAgility's other patents are located in the Boston and Washington, D.C. area. Exh. A, ¶ 11(b)-(d). In his declaration, Mr. Nelson makes very clear that "It would be more convenient for

---

[2] The "private" interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198. The "public" interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Id.*

[3] *See also Music City Coach, Inc. v. Star City Coach Works, Ltd.*, 2010 U.S. Dist. LEXIS 32917, at *33 (M.D. Tenn. April 2, 2010) ("[I]t is generally presumed that party witnesses will appear voluntarily in either jurisdiction, but non-party witnesses, with no vested stake in the litigation, may not.").

**VIRTUALAGILITY'S RESPONSE TO DEFENDANTS' JOINT MOTION TO TRANSFER VENUE**     **Page 6 of 17**

me to travel to Texas to attend and testify at trial than if the trial were in Northern California . . . Northern California would be burdensome as compared to testifying at trial in Texas." Exh. D., G. Nelson Decl., ¶ 5. The Defendants did not address the patent prosecution attorneys at all.

An important non-party witness is Janet Beaven, the surviving widow of Douglas Beaven, the sole inventor of the '413 Patent and founder of Agility Management Service, LLC, and Agility Management Partners, Inc., which later was acquired by and became part of VirtualAgility, Inc., which Mr. Beaven also co-founded. Exh. A., Rudolph Decl., ¶ 11(a). Ms. Beaven lives in Boston, Massachusetts and is believed to have personal knowledge regarding at least Mr. Beaven's personal and work history; VirtualAgility's and its predecessor companies' early formation, beginning in 1998; Mr. Beaven's activities involving the Patent-in-Suit; business activities of Agility Management Partners, Inc.; VirtualAgility's corporate history; VirtualAgility's prior organizational structure; and the early development of VirtualAgility's products and services. *Id*. Marshall is much closer to her residence in Boston than Northern California such that it will be less burdensome to her if she testifies at trial in EDTX. *Id*.

Former VirtualAgility officers and/or employees such as John Hughes, Zorana Ilic and Steve Green have knowledge of facts that may be relevant to this case, such as VirtualAgility's pre-suit business activities. They live in New York City and Northern Virginia, which are much closer to EDTX than NDCA. If one compares the total travel time (flight time + drive time) for the non-party witnesses to go from their nearest major airport to EDTX (Marshall) as compared to NDCA (San Francisco), many of the non-parties would have a significantly less travel time by going to EDTX. *See* Exh. A, Rudolph Decl., ¶ 10(b) Chart 1 – Total Travel Time.

The Defendants argued that VirtualAgility's former employee Robert Torchon, resides in Ventura County, California and thus NDCA is a more convenient venue for him. Mr. Torchon last worked for VirtualAgility in 2006 and for a little over a year. Exh. A, Rudolph Decl., ¶ 13(i).

He is not an inventor of the '413 Patent. Defendants do not explain why Mr. Torchon is relevant to this case, yet they want the Court to consider his Ventura County residence.

In virtually every patent litigation, the accused infringer will assert invalidity and cite allegedly invalidating prior art. This case is no different. Here, the Defendants have presented "Oracle Projects" as allegedly "key" prior art. Motion, at 13. They allege that several non-party witnesses with knowledge of "Oracle Projects" reside in NDCA and that should weigh in favor of transferring venue to NDCA. These witnesses' importance is overblown. It is very rare for prior art inventors to testify at trial. *TechnologiesWeb Techs, LLC v. Nec Corp. of Am., Inc.*, 2013 U.S. Dist. LEXIS 46296, at *32 n.13 (E.D. Tex. Mar. 21, 2013) (J. Davis) ("In the Court's experience, inventors of prior art rarely, if ever, actually testify at trial."). If this case progresses as many patent cases do, the Defendants will likely assert many other additional allegedly "key" prior art references – as many as they can find. The people with relevant knowledge about alleged prior art references could be located anywhere, perhaps even within or close to EDTX, in which case EDTX would be a more convenient venue for those witnesses. It is far too speculative at this very early point of the case to assume that "Oracle Projects" is as important to the Defendants' invalidity defense as they claim and thus there is no justification for giving material consideration to the location of people with knowledge about it in the transfer analysis. Based on VirtualAgility's preliminary analysis, there is ample reason to believe that "Oracle Projects" does not invalidate the '413 Patent given that it fails to disclose certain elements of the one claim that it is charted against by Defendants.[4] If the Defendants' tactic is permitted, it will

---

[4] Defendants have charted Oracle Projects against one of the 21 claims of the '413 Patent. For example, Oracle Projects fails to disclose a "representation of a model of the collaborative activity in the storage device." Claim 1 of the '413 Patent. The Defendants' citations to the Oracle user guide fall woefully short of demonstrating how a model is represented in the reference. Further, Oracle Projects does not disclose a "model entity being capable of simultaneously belonging to a hierarchy having one of the types and hierarchy having another of the types." *Id*. Although the Defendants cite to numerous excerpts from the Oracle user guide for this claim element, there is no showing that the cited "model entities" belong to multiple hierarchies. Also, the Defendants fail to show how Oracle

**VIRTUALAGILITY'S RESPONSE TO DEFENDANTS' JOINT MOTION TO TRANSFER VENUE**     Page 8 of 17

simply invite accused infringers in future cases to cite to as many allegedly "key" prior art references that they can find which have some geographic connection to their preferred transferee forum. This should not be permitted because it is too easily subject to manipulation. Further, even if the "Oracle Projects" prior art was as debilitating as Defendants would have this Court believe, the contents of the cited user guide should be more than sufficient for the Defendants to prove their invalidity case. *See Advanced Processor Techs. LLC. V. Atmel Corp.*, No. 2:12-CV-152-JRG-RSP, 2013 U.S. Dist. LEXIS 43050, at *19 (E.D. Tex. Mar. 26, 2013) ("As patents and printed publications, [the prior art's] principal evidentiary value lies in the content of the patents and publications themselves."). Consequently, Defendants' use of the Oracle Projects reference is nothing more than their attempt to shoehorn NDCA-located non-party witnesses into their venue transfer analysis. As such, it should be given no weight.

> **b)** **The convenience of the party witnesses weighs heavily against transfer, and a transfer would only shift the inconveniences from Salesforce to VirtualAgility.**

The party witnesses, who can be compelled to testify on behalf of their employer, are found in EDTX, Boston, Austin, Houston, New York, Charlotte, Washington, D.C., and NDCA.[5] VirtualAgility's employee witnesses are primarily located in the Boston area such as Stuart Rudolph, VirtualAgility's President, CEO, and Chairman of the Board. Exh. A Rudolph Decl. Other potential witnesses include Janet Ahlgren, Gideon Moran, and Nhat Phan in Boston and Hung Phan in Atlanta, Georgia. *Id.* A transfer would mean that these potential witnesses would have to travel to NDCA to testify, which would increase the burden to VirtualAgility, while Salesforce's California-based witnesses would no longer have to travel to EDTX. All this would accomplish is shift the inconveniences from one party to another. The alleged burden to

---

Projects teaches "viewing model entities as ordered by a value" as required by Claim 1 of the '413 Patent. VA's full analysis rebutting the Oracle Projects reference will be disclosed, in due course when discovery proceeds.

[5] *Smith v. Kyphon*, 578 F. Supp. 2d 954, 963 (M.D. Tenn. 2008) ("[b]ecause these witnesses are employees who can be compelled to testify on behalf of their employer, their convenience is of lesser relevance.").

**VIRTUALAGILITY'S RESPONSE TO DEFENDANTS' JOINT MOTION TO TRANSFER VENUE**     **Page 9 of 17**

Salesforce's employees in San Francisco, on balance, does not outweigh the other party and many non-party witnesses that would be inconvenienced if this action was transferred to NDCA. As such, this factor weighs heavily against transfer. *See Sybase, Inc. v. Vertica Sys., Inc.*, No. 6:08cv24, 2008 WL 2387430, at *3 (E.D. Tex. June 9, 2008) ("shifting of inconveniences does not support transfer") (citations omitted).

It is undisputed that Salesforce is the only defendant that has its principal place of business in or near NDCA. It is also undisputed that Dr. Pepper (based in Plano) has its principal place of business in the Eastern District of Texas and that Kimberly-Clark (based in Irving), BMC (based in Houston), and Dell (based in Austin) have their principal places of business in Texas. The remaining defendants have principal places of business in cities that are indisputably closer to EDTX than NDCA – NBC is in New York City; the FedEx Defendants are in Memphis; LivingSocial is in Washington, D.C., and the Bank Defendants are in Charlotte and New York City. Other than Salesforce, every defendant has its principal place of business located in either Texas or in a city located east of Texas. If one compares the total travel time (flight time + drive time) for the parties to go from their nearest major airport to EDTX (Marshall) as compared to NDCA (San Francisco), every party except for Salesforce would have a significantly less travel time by going to EDTX. Exh A, Rudolph Decl., ¶ 10(b) Chart 1 – Total Travel Time. Similarly, in terms of the distance (by driving miles) between the parties' principal places of business to EDTX (Marshall) as compared to NDCA (San Francisco), every party except for Salesforce would have a significantly less distance to travel by going to EDTX. *Id.*

Despite these indisputable facts, the Defendants would lead the Court to believe that NDCA is a "clearly more convenient" forum than EDTX. Perhaps the Customer Defendants are trying to appease Salesforce, whom they likely hope will indemnify them in this action assuming that has not already occurred. Yet, the Defendants' credibility is suspect when some of the

Texas-based Customer Defendants assert that NDCA is *more convenient* to them than EDTX even though common sense would suggest (and a simple Google Maps query would confirm) that these defendants are located much closer to the Marshall courthouse than NDCA. Apparently, some Defendants will say anything to avoid EDTX. For example, Houston-based defendant BMC, which admits that just as many employees use the accused products in EDTX as in NDCA, nevertheless wants this Court to believe that NDCA is a more convenient venue although BMC is located only 223 miles from Marshall while NDCA is 1,927 miles away.[6] If a party is willing to say that appearing for trial in a courthouse located 1,927 miles away is "more convenient" to it than appearing for trial at a courthouse that is only 223 miles away, then it should raise serious concerns about whether Defendants' other statements in their Motion and declarations would withstand the light of truth if VirtualAgility was able to conduct discovery.

The Defendants suggest that Gen. Michael P.C. Carns (USAF retired), a member of the VirtualAgility Board of Directors, is a relevant witness and that his residence in California makes NDCA a more convenient forum for him than EDTX. Motion at 8. In his declaration, attached hereto as Exhibit E, Gen. Carns dispels the Defendants' notion that he is an important witness or that NDCA is necessarily more convenient for him if asked to testify at trial. Gen. Carns explains that he is not and has never been involved in the development of VirtualAgility's technology or its products and that he does not have personal knowledge of the engineering involved in VirtualAgility's technology or VirtualAgility's products. Gen. Carns has never been involved in the development of VirtualAgility's intellectual property, including its patents. Furthermore, given his busy travel schedule which takes him away often from his California

---

[6] See B. Siordia Decl. (Dkt No. 58); Compare Houston, TX to Marshall, TX distance (223 miles) at https://maps.google.com/maps?client=safari&rls=en&q=houston+to+san+francisco&oe=UTF-8&um=1&ie=UTF-8&hl=en&sa=N&tab=wl to Houston, TX to San Francisco, CA distance (1927 miles) at https://maps.google.com/maps?client=safari&rls=en&q=houston+to+san+francisco&oe=UTF-8&um=1&ie=UTF-8&hl=en&sa=N&tab=wl

**VIRTUALAGILITY'S RESPONSE TO DEFENDANTS' JOINT MOTION TO TRANSFER VENUE**      **Page 11 of 17**

residence and his work location in Washington, D.C., it is actually more likely than not that EDTX would be a more convenient forum for him.

## 2. The relative ease of access to sources of proof weighs against transfer.

Documents relevant to this case are spread throughout the country. VirtualAgility's documents are located in Winchester, on the computers of employees based in the Boston area, and at the offices of its Texas-based litigation counsel. Exh. A., ¶ 6. The Defendants' documents are in EDTX, Houston, Austin, Boston, New York, Charlotte, Washington, D.C., and NDCA. Dr. Pepper is based in Plano, Texas, and therefore one can expect to find in this District documents pertaining to Dr. Pepper's product license agreement with Salesforce involving the accused instrumentalities, how Dr. Pepper uses the accused instrumentalities, the extent to which Dr. Pepper uses the accused instrumentalities, and financial documents pertaining to its use of the accused instrumentalities. *See* M.L. Woods Decl. (Dkt No. 53) ("DSPG, Inc. or its subsidiary negotiated a product license agreement with Salesforce.com, Inc.").

Austin-based Dell admits to having documents related to its Salesforce consulting practice in Plano, Texas, which is in this District. *See* S. Hassan Declaration (Dkt No. 49). Dell admits that its Salesforce consulting practice is involved in selling and implementing Salesforce products. These are among the accused infringing activities by Dell that are at issue in this case. In addition to Plano, Texas, Dell has documents and emails in Round Rock, Texas pertaining to its Salesforce consulting practice and resale of Salesforce licenses. *Id*.

BMC is based in Houston, Texas and admits that it has employees within this District that use the accused infringing "Sales Cloud" product. BMC likely has documents in this District and in Houston pertaining to its use of the accused instrumentalities. *See* B. Siordia Declaration (Dkt No. 58). Kimberly-Clark, based in Irving, Texas, likely has documents there pertaining to its use of the accused instrumentalities. FedEx, based in Memphis, admits that it has employees within

this District that use Salesforce products. *See* L. Diebold Declaration (Dkt No. 57). FedEx likely has documents in this District and in Memphis pertaining to its use of the accused products. The Bank Defendants are located in New York (MLPFS) and Charlotte (ML, BAC, BANA). MLPFS and BANA admit that they have employees within this District that use the accused products. *See* V. Bona Declaration (Dkt No. 59). Therefore, it is quite likely that the Bank Defendants have documents in this District and in New York and Charlotte pertaining to their use of the accused products. NBC is based in New York City and likely has documents there pertaining to its use of the accused instrumentalities. LivingSocial is based in Washington, D.C. where it likely has documents pertaining to its use of the accused products.

Salesforce contends that the majority of its documents are in NDCA, but does not address a key issue – does it have documents, of any type, relating to the accused products that are located in EDTX or elsewhere in Texas? Salesforce's declaration focuses on confidential, proprietary documents. Infringement need not be proven via only confidential, proprietary, or technical information., and Salesforce never denies having sent non-confidential documents concerning how its accused products work to its customers in this District such as Plano-based Dr. Pepper or to its co-defendants in Texas and elsewhere.

      **3.    The availability of compulsory process to secure the attendance of witnesses is a neutral factor.**

The relevant non-party witnesses are located across the country. Neither NDCA nor EDTX have subpoena power over potentially important non-party witnesses such as the patent prosecution attorneys, Janet Beaven (inventor Douglas Beaven's widow), and VirtualAgility's former offices and employees who reside in cities such as Boston, Washington, D.C., New York, and Atlanta. Robert Torcon lives in Ventura County, California. Ventura County is not in

NDCA, but is 368 miles away[7] in the Central District of California, which is outside the subpoena range of NDCA. Defendants argue that NDCA is more convenient because certain non-party witnesses exist in NDCA that have knowledge about the alleged "Oracle Projects" prior art. However, "in this Court's experience, it is rare for a third party witness to testify live at trial." *DataTreasury v. Capital One, et al.,* No. 6:11-cv-92, Dkt No. 143, at 8 (E.D. Tex. Jan. 30, 2012).[8] This factor is neutral.

### 4. Other practical problems weigh against transfer.

The burden on Defendants to litigate in this District is not nearly as high as they have alleged. Defendants' litigation counsel are based in Texas. The same Austin-based counsel represents all defendants except Kimberly-Clark, which is represented by Dallas-based litigation counsel. The Defendants would likely spend the same or even save money on their attorneys' travel expenses if transfer is denied. Also, for parties and non-parties alike, attending trial in EDTX is less expensive with respect to hotel expenses, which are higher in NDCA. *See* Exh. F.

## C. The Public Interest Factors Do Not Favor Transfer to the Northern District of California

### 1. There is a strong local interest in having this case decided in this District.

The court must consider local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I,* 371 F.3d at 206 (5th Cir. 2004). Communities have the right to adjudicate disputes involving "several individuals" who have had their "work and reputation"

---

[7] See Google Maps query – Ventura, CA to San Francisco, CA at
http://maps.google.com/maps?client=safari&rls=en&oe=UTF-8&um=1&ie=UTF-8&gl=us&daddr=San+Francisco,+CA&saddr=Ventura,+CA&panel=1&f=d&fb=1&dirflg=d&geocode=Kal3ALLSYumAMbOww0fwkJXd;KSEAaQBtmoWAMf-tdvBnE1BK&sa=X&ei=1yafUa2BM5Da8ATJlYDYDg&ved=0CC8Q-A8wAA

[8] *See also EMG Tech., LLC v. Microsoft Corp.,* Nos. 6:09cv367 & 6:08cv447, 2010 WL 3835768, at *3 (E.D. Tex. Sept. 28, 2010) ("[W]itnesses in a patent case usually include the inventor and/or plaintiff's corporate representative, defendants' party representatives who may testify about infringement or willfulness, and infringement, invalidity, and damages experts for each side.").

called into question "and who presumably conduct business in that community." *In re Hoffman-La Roche, Inc.,* 587 F.3d 1333, 1336 (Fed. Cir. 2009). Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests. *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 318 (5th Cir. 2008) (en banc).

The citizens of this District have a strong local interest in adjudicating a dispute which calls into question the work and reputation of individuals working in their local community. Dr. Pepper is based in this District and accused of infringing activities in this District. Similarly, Dell has a Salesforce consulting practice that operates, in part, out of this District. Other defendants such as BMC have admitted that certain of their employees use the accused products within this District. Dell admits that it stores documents in Plano, TX, within this District, relating to its Salesforce consulting services. The citizens of this District should decide whether these accused infringers' activities within this District are infringing.

### 2. The remaining public interest factors are neutral.

The remaining public interest factors (administrative difficulties flowing from court congestion; familiarity of the forum with the law that will govern the case; and avoidance of unnecessary problems of conflict of laws in the application of foreign law) are neutral.

### III. CONCLUSION

The NDCA is not a clearly more convenient venue. Therefore, the Court should deny Defendants' Motion. If the Court believes that the record is insufficient for it to conduct a full transfer analysis at this time, then VirtualAgility requests permission to take a deposition of each Defendant about their declarations and permit the parties to provide supplemental briefing after the depositions have concluded.

Dated: May 24, 2013

                Respectfully submitted,

                /s/ D. Neil Smith

                **D. NEIL SMITH,** Attorney in Charge
                TEXAS STATE BAR NO. 00797450
                **EDWARD CHIN**
                TEXAS STATE BAR NO. 50511688
                **ANDREW J. WRIGHT**
                TEXAS STATE BAR NO. 24063927
                **KIRK VOSS**
                TEXAS STATE BAR NO. 24075229
                **NIX PATTERSON & ROACH, L.L.P.**
                5215 N. O'Connor Blvd., Suite 1900
                Irving, Texas 75039
                972.831.1188 (telephone)
                972.444.0716 (facsimile)
                dneilsmith@mac.com
                edchin@me.com
                andrewjwright@me.com
                kirkvoss@me.com

                **DEREK GILLILAND**
                TEXAS STATE BAR NO. 24007239
                **NIX PATTERSON & ROACH, L.L.P.**
                205 Linda Drive
                Daingerfield, Texas 75638
                903.645.7333 (telephone)
                903.645.5389 (facsimile)
                dgilliland@nixlawfirm.com

                **ATTORNEYS FOR PLAINTIFF**
                **VIRTUALAGILITY, INC.**

## CERTIFICATE OF SERVICE

       The undersigned certifies that the foregoing document was filed electronically and served via the Court's electronic filing system on all counsel who have consented to electronic service on this the 24th day of May, 2013.

*/s/ D. Neil Smith*

_____
**D. NEIL SMITH**
**NIX PATTERSON & ROACH, L.L.P.**