**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| VIRTUALAGILITY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:13-cv-00011-JRG |
| | § | |
| SALESFORCE.COM, INC., ET AL | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Joint Motion to Transfer Venue.   (Dkt. No. 49.)

Defendants Salesforce.com, Inc., Dell Inc., Dr Pepper Snapple Group, Inc., Kimberly-Clark Corp.,

NBCUniversal, Inc., LivingSocial, Inc., FedEx Corporation, FedEx Corporate Services, Inc.,

BMC Software, Inc., Bank of America Corporation, Bank of America, National Association,

Merrill Lynch & Co., Inc., and Merrill Lynch, Pierce, Fenner & Smith Incorporated (collectively

"Defendants") jointly move the Court to transfer the above-styled action to United States District

Court for the Northern District of California pursuant to 28. U.S.C. § 1404(a).   Having considered

the parties' written submissions, the Court **DENIES** Defendants' motion.

I.      **Background**

Plaintiff VirtualAgility, Inc. ("VirtualAgility" or "Plaintiff") filed suit on January 4, 2013

against the above Defendants, alleging infringement of one United States Patent No. 8,095,413

(the "413 Patent").   Plaintiff sought an award of money damages as well as a permanent

injunction enjoining each Defendant from continued infringing activities.   The accused infringing

1

products are cloud-based Salesforce software, including the "Sales Cloud" and "Service Cloud" applications.

## II.     Applicable Law

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   28 U.S.C. § 1404(a).   The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."   *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case.   *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).   The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.   *In re Volkswagen I*, 371 F.3d at 203.   The public factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law.   *In re Volkswagen I*, 371 F.3d at 203. These factors are to be decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).   Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is

2

dispositive.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*").

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's burden of proof.  *Id.* at 315.  In order to support its claim for a transfer under § 1404(a), the defendant must demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff.  *Id.* Absent such a showing, however, the plaintiff's choice is to be respected.  *Id.*

### III.    Analysis

The Court will examine each of the applicable private and public factors listed above, addressing the parties' specific arguments where applicable.

### A.  This Action Could Have Been Brought in Northern District of California

The parties do not dispute that this action could have been brought in Northern District of California.   Thus, the threshold requirement for a § 1404(a) transfer has been satisfied.

### B.  Private Interest Factors

#### i.  *Relative Ease of Access to Sources of Proof*

Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be a private interest factor to be considered.  *See Volkswagen II*, 545 F.3d at 316.   In this case, Plaintiff VirtualAgility is a Delaware corporation maintaining its principal place of business in Winchester, Massachusetts.   Of the thirteen accused Defendants who have jointly moved this Court to transfer the case to Northern District of California, Dr. Pepper Snapple Group, Inc. ("Dr. Pepper") is based in Eastern District of Texas; Kimberly-Clark, Corp. ("Kimberley-Clark"), Dell Inc. ("Dell"), and BMC Software, Inc. ("BMC") are based elsewhere in Texas in Irving, Round Rock and Houston respectively.   Dell

also operates an East Texas Plano facility.  Eight other Defendants are based in cities east of

Texas such as New York City, NY; Charlotte, NC; Memphis, Tenn.; and Washington DC.

Indeed, Salesforce.com, Inc. ("Salesforce") is the only Defendant based in Northern District of

California.

Much of Defendants' argument rests upon the notion that because Salesforce is the sole

maker of the accused "Sales cloud" and "Service Cloud" applications, Salesforce's "development,

manufacturing and marketing" of these products are "key evidence" in this litigation and should be

the sole focus of this Court's venue analysis.  Accordingly, Salesforce argues that evidence

regarding the rest of the Defendants should have "little or no effect."  This Court disagrees.  This

Court finds no Fifth Circuit authority which approves a qualitative ranking among defendants

resulting in consideration of one defendant while excluding consideration of the remaining

defendants and their circumstances.

Defendants base their arguments on several district court cases where the courts found

certain customer defendants to be mere "ordinary users" of the accused instrumentality and the

claims against such customers were therefore "peripheral" to the dispositive infringement claims.

*See Teleconference Sys. v. Proctor v. Gamble Pharms., Inc.*, 676 F. Supp. 2d 321 (D. Del. 2009);

*Spread Spectrum Screening, LLC, v. Eastman Kodak Co.*, No. 10-C-1101, 2010 WL 351606 (N.D.

Ill. Sept. 1, 2010).  These cases, however, are distinguishable from the instant one.  Here,

co-Defendant Dell is far more than just an "ordinary user" of the accused products.  A September,

2012 news article, published from Dell's East Texas Plano facility, publicized the launch of a

"Salesforce Consulting Practice" within the "Dell Services" business group.  *See* Dkt. No. 71-1.

In the article, Dell announced that it had attained "Salesforce Platinum Partner Status" and the

Salesforce Consulting Practice aimed at "provid[ing] effective planning and execution of

Salesforce solutions [to Dell customers] and leverage the Salesforce Platform to help maximize return on [the customers'] cloud investments." *Id.* Dell further announced that its Salesforce consultants will work with Dell customers to "deploy best practice solutions" using Salesforce products, such as to determine which Salesforce tools "are right for the [customers]' organization." *Id.* For customers new to cloud computing, Dell's Salesforce consultants will help them "build custom applications on the Salesforce platform to meet a variety of business needs." *Id.* Such partnership relationship between Dell and Salesforce has been confirmed by the manager of Dell's Salesforce Consulting Practice, Syed Hassan. Dkt. No. 52 ("Hassan Decl.") ¶ 2. Mr. Hassan further testified that Dell's Salesforce Consulting Practice in fact sells Salesforce products directly. Hassan Decl. ¶ 2. Unlike an "ordinary user" who simply takes a Salesforce product as it was provided, Dell being Salesforce's "Platinum Partner," possesses not only sales information of the accused products but also the technical know-how of configuring the general Salesforce platform into one that meets a particular customer's needs. Such information is highly relevant to both Plaintiff's infringement and damage claims. The Court therefore should obviously take them into consideration in the venue analysis.

Significant sources of proof relating to Dell's Salesforce Consulting Practice exist in this district and elsewhere in Texas. Dell Services, the business group who announced the launch of the Salesforce Consulting Practice, is headquartered in Plano, Texas – well within the boundaries of the Eastern District of Texas. Dkt. No. 71-1. Mr. Hassan, manager of the Salesforce Consulting Practice, lives and works in Round Rock, Texas – Dell's corporate headquarters. Hassan Decl. ¶ 3.[1] At least one Dell employee who is familiar with technical issues relating to Salesforce products divides his time between Round Rock, Texas and India. *Id.* ¶ 5. Common

---

[1] Mr. Hassan represented that he "do[es] not manage any consultants that are based out of the Dell Services facility in Plano, Texas." Hassan Decl. ¶ 4. Such a statement merely describes Mr. Hassan's own job responsibility. It is not proof of the existence or nonexistence of relevant evidence located at Dell Services' Plano headquarters.

document shares for the Salesforce Consulting Practice are located in Plano, TX and Los Altos, California respectively. *Id.* ¶ 6. While Dell also maintains a Salesforce resale team in Santa Clara, CA, Defendants have not identified what information its California team may provide in addition to those already available from Dell Services' Plano headquarters and from Mr. Hassan, who testified that he is "familiar with the resale of Salesforce licenses by Dell." Hassan Decl. ¶¶ 2, 5.

Furthermore, while it is generally true that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer," *see In re Genentech*, 566 F.3d at 1345, the specific circumstances of this case require this Court to also look closely at evidence relating to Plaintiff's injury. Plaintiff VirtualAgility and Defendant Salesforce "directly compete in at least the enterprise cloud computing market targeting public sector entities." *VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2:13-CV-00011-JRG, 2014 WL 94371, at *6 (E.D. Tex. Jan. 9, 2014). Aside from an award of damages, Plaintiff seeks a permanent injunction enjoining Defendants from continued infringing activities. Dkt. No. 1, Compl. ¶ 55. It is well-settled that to obtain a permanent injunction, a plaintiff must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006). Evidence regarding the nature and extent of Plaintiff's injury is highly relevant to this litigation.

Here, Plaintiff VirtualAgility states that beginning in 2005, it partnered with IBM Corporation ("IBM") regarding integration of VirtualAgility's software solution onto IBM's systems. IBM, however, now offers a cloud-based "Salesforce integration" service, which

competes with Plaintiff VirtualAgility.   Dkt. No. 66-1, Rudolph Decl. ¶ 9.   IBM's adoption of the Salesforce integration service subsequent to its partnership with VirtualAgility is direct proof of the extent, if any, to which VirtualAgility has been injured by Salesforce's conducts.   The IBM executive responsible for the VirtualAgility-IBM relationship is employed at IBM's Dallas, Texas facility.   The IBM technical lead responsible for installing and integrating VirtualAgility's technology is employed at IBM's Coppell, Texas facility.   Both facilities are located very near to the Eastern District of Texas.

This Court is mindful that Salesforce, maker of the accused products, is based and operates in Northern District of California.   It possesses information regarding the development, manufacturing and marketing of the Salesforce products.   Such evidence, though clearly relevant, cannot be the sole focus of this Court's venue analysis.   The Federal Circuit has cautioned district courts against evaluating the significance of the identified evidence in venue analysis, and instead instructed the courts to focus on the "relevance and materiality" of the information.   *See In re Genentech*, 566 F.3d at 1343-44 ("Requiring a [party] to show that a potential witness has more than relevant and material information [for purpose of venue analysis]…is unnecessary …It was not necessary for the district court to evaluate the significance of the identified witnesses' testimony.").   To the extent the parties identify any evidence and witnesses that are both "relevant and material" to this litigation, this Court is obligated to consider them.   As discussed above, Defendant Dell and Plaintiff VirtualAgility have both identified significant evidence located within or very near to this district.   Four out of the thirteen accused Defendants are headquartered either in this district or elsewhere in Texas.   This Court, viewing all the relevant evidence presented before it, concludes that the ease of access to sources of proof factor weighs very slightly in favor of transfer.

### ii.   Availability of Compulsory Process

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order.   *See In re Volkswagen II*, 545 F.3d at 316. In *In re Volkswagen II*, under the then effective Federal Rule of Civil Procedure 45, the Fifth Circuit expressed concerns over a situation where the non-party witnesses, located outside the presiding court's subpoena power for attending deposition, had to travel more than 100 miles to attend trial thereby subjecting any trial subpoenas issued for the witness to motions to quash.   *Id.* There, not only might the non-party witness be inconvenienced by having to travel more than 100 miles to attend trial, the proffering party also risked losing the witness altogether should the court sustain a motion to quash.

Rule 45, however, has since been amended in 2013.[2]   In particular, while the old Rule 45(a)(2) provided that a court may issue a deposition subpoena only if the deposition is to be taken in the district where the court resides, the amended Rule 45(a)(2) makes it clear that the presiding court may issue nationwide deposition subpoenas so long as the deposition is to take place within 100 miles of the witness's residence or regular place of business.   Fed. R. Civ. P. 45(a)(2), 45(c)(1)(A); *see* Committee Notes on Rules – 2013 Amendment ("The [2013] amendments recognize the court where the action is pending as the issuing court, permit nationwide service of subpoena and collect in a new subdivision (c) the previously scattered provisions regarding place of compliance.").   Under the current Rule 45, regardless of the venue in which a case is originally filed, parties may now secure the attendance of any non-party witnesses, at least in the form of taking the witnesses' deposition.   This recent amendment to Rule 45 has direct application to the

---

[2] Defendants' motion was filed after the 2013 amendment to Rule 45, and is therefore governed by Rule 45 as amended in 2013.

Fifth Circuit's earlier concern expressed in *In re Volkswagen II* about a non-party witness being inconvenienced for having to travel more than 100 miles to attend trial.   The proffering party now has the option to depose the non-party witness near that witness's residence or regular place of business, and later present the witness's deposition testimony at trial.   *See* Fed. R. Civ. P. 32(a)(4) ("A party may use for *any purpose* the deposition of a witness, whether or not a party, if the court finds…that the witness is more than 100 miles from the place of hearing or trial…").

In this case, both sides have identified potential non-party witnesses.   As discussed above, Plaintiff have identified two current employees of IBM, who were the manager and technical lead of the VirtualAgility–IBM partnership, respectively.   Both employees are located near IBM's facilities at Dallas, Texas.   Defendants have identified one current and one former employee of Oracle Corporation ("Oracle"), who developed the alleged prior art "Oracle Projects."   Both Oracle witnesses reside in the Northern District of California.   Defendants further identified a former employee of Salesforce, who was a product management director of Salesforce's accused products and who now resides and works in San Francisco, CA.

Under Rule 45(c)(1)(A), neither this Court nor the Northern District of California may command all identified non-party witnesses to attend trial.[3]   Both courts, however, may command these witnesses to attend and be subject to being deposed.   Fed. R. Civ. P. 45(a)(2), 45(c)(1)(A). Defendants contend that they will be prejudiced should this case remain in Eastern District of Texas, because they will not be able to compel the three identified non-party witnesses to appear for trial.   Under the pre-2013 Rule 45, Defendants would have been undisputedly prejudiced, because these non-party witnesses, located in the Northern District of California, were outside this Court's subpoena power for both deposition and trial.   Defendants would have risked losing these

---

[3] The IBM witnesses, for example, would have to travel more than 100 miles to N.D. Cal. and to this Court to attend trial.   The Oracle witnesses and the former Salesforce employee would have to travel more than 100 miles to this Court to attend trial.

witnesses' testimony altogether.   Under newly amended Rule 45, however, this Court may command such witnesses to attend their depositions and be deposed at length.   All that is required of Defendants is to arrange the deposition within 100 miles of the witness's residence or regular place of business.   Given that Defendant Salesforce is headquartered in N.D. Cal., right where all three identified non-party witnesses reside, it can hardly argue that taking these witnesses' depositions in N.D. Cal. would impose any sort of inconvenience on its part.

Therefore, regardless of whether this case remains in E.D. Tex. or gets transferred to N.D. Cal., Defendants would be able to secure the attendance of their identified non-party witnesses at least through deposition.   The only difference between the two venues is that Defendants may present live testimony of these witnesses in N.D. Cal., while they must rely on such witnesses' deposition testimony in this Court.   The proper inquiry, under newly amended Rule 45, is then how much, if at all, Defendants might be inconvenienced by having to rely on depositions as opposed to live attendance at trial.   *Cf. In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (instructing the court to focus on relative convenience instead of absolute convenience in venue analysis); *In re Toa Technologies, Inc.*, MISC. 153, 2013 WL 5486763 (Fed. Cir. Oct. 3, 2013) (same).   In their briefing, Defendants have failed to explain how they would be inconvenienced by presenting only the non-party witnesses' deposition testimony at trial.   Indeed, Defendants have failed to even recognize the possibility of presenting these witnesses' testimony by deposition.   The Fifth Circuit, however, has observed that a videotape deposition, when properly admitted, would serve as an acceptable substitute for live testimony as it "allows jurors to gauge the witness's attitude reflected by his motions, facial expressions, demeanor and voice inflections."   *Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 554 (5th Cir. 2000) (citing *United States v. Tunnell*, 667 F.2d 1182, 1188 (5th Cir.1982)).   While this Court

recognizes some generic benefit of providing live witnesses at trial, the Court is not convinced that using the non-party witnesses' deposition as opposed to live testimony at trial would seriously inconvenience Defendants.   *See In re Genentech*, 566 F.3d at 1346 ("The Supreme Court has long held that § 1404(a) requires individualized, case-by-case consideration of convenience and fairness.") (internal quotation omitted).   If Defendants know beforehand that their depositions will be used at trial, any inconvenience of not having the witnesses appear live is even reduced further.

Further, it is undisputed that Plaintiff's identified non-party witnesses, both located near Dallas, Texas, cannot be compelled to attend trial in the Northern District of California. Transferring the case there in no way helps the Plaintiff to secure the attendance of their identified non-party witnesses.   Thus, considering "the convenience of parties," which include both Plaintiff and Defendants, this Court concludes that the availability of compulsory process is essentially neutral.   *See* 28 U.S.C. § 1404(a).

### *iii.  Cost of Attendance for Willing Witnesses*

The third private interest factor is the cost of attendance for willing witnesses.   "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 556 F.3d at 1342.   "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled."   *Id.* at 1343 (citing *In re Volkswagen II*, 545 F.3d at 317).

As discussed above, here Defendant Salesforce is headquartered in the Northern District of California.   Defendants also identified three potential non-party witnesses who reside within that district.   On the other hand, both Defendant Dell and Plaintiff VirtualAgility have identified

potential witnesses who are located within or near the Eastern District of Texas.   Dell Services, which launched the Salesforce Consulting Practice in September, 2012, is headquartered in the Eastern District of Texas.   The manager of the Salesforce Consulting Practice, Mr. Hassan, works and resides in Round Rock, Texas.   The Dell employee who is familiar with technical issues relating to Salesforce products divides his time between India and Round Rock, Texas.   Plaintiff's non-party witnesses – the two IBM employees who were in charge of the VirtualAgility-IBM partnership – are both located near Dallas, TX.

Furthermore, Defendant Dr. Pepper is headquartered in the Eastern District of Texas. Defendants Kimberly-Clark and BMC are based in Irving, TX and Houston, TX respectively. While these defendants have not identified any specific witnesses, each of them will need to present at least a corporate representative at trial.   It is much more convenient for the representatives of these Defendants to travel to this Court than to the Northern District of California.

Lastly, Plaintiff and the remaining Defendants are all based in cities east of Texas such as Winchester, MA, New York City, NY, Charlotte, NC and Washington DC.   These parties will at least be "slightly more inconvenienced" by the case being tried in California than Texas.   *See In re Genentech*, 566 F.3d at 1345 (finding a German corporation will be "slightly more inconvenienced" if the case were tried in California as opposed to Texas).

In sum, potential witnesses exist within or near both the Northern District of California and the Eastern District of Texas; one Defendant is based in Eastern District of Texas, one in Northern District of California, and three are based elsewhere in Texas; the remaining parties are based in cities east of Texas.   On balance, the Court finds this factor weighs slightly against transfer.

*iv.  All Other Practical Problems*

12

"Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *Eolas Technologies, Inc. v. Adobe Sys., Inc.*, 6:09-CV-446, 2010 WL 3835762 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011).   In this case, there are no related actions pending either before this Court or before the Northern District of California.   This factor is therefore neutral.

### C.  Public Factors

#### i.  *Local interest in having localized interests decided at home*

The Court must consider local interest in the litigation because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004).   Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests.   *In re Volkswagen II*, 545 F.3d at 318.

In this case, the Northern District of California has a vested interest in the outcome of the case because Defendant Salesforce is headquartered in San Francisco, California.   Meanwhile, this district also has a local interest in this dispute because both Dell Services and Defendant Dr. Pepper are headquartered within the Eastern District of Texas.   This factor is therefore neutral.

#### ii.  *The remaining public interest factors*

The parties agree that the remaining public interest factors, i.e., administrative difficulties flowing from court congestion, familiarity of the forum with the governing law and avoidance of unnecessary conflicts of laws, are neutral.

In sum, one factor weighs slightly in favor of transfer, one weighs slightly against transfer, and all the remaining six factors are neutral.   The balance of the private and public factors demonstrate that Defendants have fallen short of establishing that the Northern District of California is "a clearly more convenient forum."   *In re Volkswagen II*, 545 F.3d at 315. Defendants having failed to do so, Plaintiff's choice of venue must remain undisturbed.   *Id.*

### IV.    Severance

In a footnote, the Salesforce Defendant further "moves for [Plaintiff]'s litigation against its customers be severed and stayed."   Dkt. No. 49 at 10 n.1.   Meanwhile, Salesforce claims that "Defendants reserve the right to seek to sever and stay [Plaintiff]'s litigation against the Customers."   *Id.*   While Salesforce's request is puzzling, the Court concludes that it has made a request for severance that the Court must address.

Salesforce has given this Court little reason to grant its request for severance.   The severance issue, as set forth within a four-line footnote, fails to cite to any authorities decided after the effective date of the joinder provisions of the Leahy-Smith America Invents Act.[4]   Neither has Salesforce presented any other underlying evidence to support its request for severance. Salesforce either has failed in its evidentiary burden altogether, or it has asked this Court to grant severance based on the evidence already presented in the transfer motion.   If the former is true, the Court will not grant severance without any supporting evidence.   In the later case, however, Defendants' Joint Motion to Transfer Venue rests primarily upon the allegation that the claims against the non-Salesforce Defendants are all based on the use of the accused Salesforce products. Such evidence, as the Court views it, argues against Salesforce's request for severance rather than supporting it.   *See In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012) (holding that joinder is

---

[4] *See* 35 U.S.C. § 299 (effective Sept. 16, 2011, before the filing of this lawsuit).

14

only appropriate where the accused products are the same and "there is an *actual link* between the facts underlying each claim of infringement;" "[I]ndependently developed products…are not part of the same transaction…"); *Vertical Computer Sys., Inc. v. LG Electronics MobileComm U.S.A., Inc.*, 2:10-CV-490-JRG, 2013 WL 2241947 (E.D. Tex. May 21, 2013) (finding the common usage of Google's Android OS to satisfy the "actual link" requirement in *In re EMC*); *see also Steuben Foods, Inc. v. Oystar Grp.*, 10-CV-780S, 2013 WL 2105894, at *7   (W.D.N.Y. May 14, 2013) (denying motion to sever one defendant and transfer the infringement claims against it to a different forum, where the infringement claims against all the named defendants appeared to be based on the same accused product).   This Court concludes that Salesforce has, in fact, made a request for severance in the instant motion, and that request is **DENIED**.

### V.      Conclusion

For the reasons stated above, the Court hereby **DENIES** Defendants' Joint Motion to Transfer Venue (Dkt. No. 49).   As to the Salesforce Defendant's request to sever the claims filed against the non-Salesforce Defendants, such request is hereby **DENIED.**

**So ORDERED and SIGNED this 31st day of January, 2014.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE